1  Matthew D. Diamond & Susan E. Diamond
   3120 E. Kesler Ln.
2  Gilbert, AZ 85295
   (480) 279-4336
3  Pro Se Plaintiffs

4

FILED ____ LODGED
____ RECEIVED ____ COPY

AUG 0 3 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

                IN THE UNITED STATES DISTRICT COURT
5                  FOR THE DISTRICT OF ARIZONA

6

7  Matthew D. Diamond and          )  Case No.:
                                   )
8  Susan E. Diamond,               )
                                   )
9          Plaintiffs,             )  CIV '09 1593  PHX FJM
                                   )
10     Vs.                         )  COMPLAINT FOR DECLARATORY AND
                                   )  INJUNCTIVE RELIEF AND FOR
11 OneWest Bank, FSB as successor  )  DAMAGES
                                   )
12 by acquisition of Indymac       )  1.  Invalid Notice of
                                   )      Trustee's Sale
13 Federal Bank,FSB; IndyMac       )  2.  Non-Default of Deed of
                                   )      Trust
14 Mortgage Services, a division   )  3.  Breach of Contract
                                   )  4.  Rescission of Real Estate
15 of OneWest Bank,FSB; Mortgage   )      Transaction
                                   )  5.  Violations of Truth In
16 Electronic Registration         )      Lending Act
                                   )  6.  Breach of Good Faith
17 Systems, Inc., a Delaware Corp. )      And Dealing
                                   )  7.  Unjust Enrichment
18 X Corporations 1-10;            )
                                   )
19 John Does 1-10.                 )
                                   )
20         Defendants              )  JURY TRIAL DEMANDED
                                   )
21 _____)

22                       COMPLAINT

23                      Introduction

24     1.   Plaintiffs Matthew D. Diamond and Susan E. Diamond

25 bring this action pursuant to the Truth in Lending Act ("TILA"),

                  [Summary of pleading] - 1

1   15 U.S.C.1601, et seq., Title 12 CFR, Regulation Z of the Truth

2   In Lending Act; 28 U.S.C. 1332 re Diversity of Citizenship, and

3   other statutory and common laws in effect.

4         Plaintiffs Matthew Diamond and Susan E. Diamond,

5   pursuant to 28 U.S.C. 1332, affirmatively allege citizenship of

6   the United States, residency of the State of Arizona, and that

7   the matter in controversy exceeds the sum or value of $75,000,

8   exclusive of interest and costs, and further affirmatively

9   allege this action is between citizens of different states as

10   Defendant "OneWest" is incorporated in the State of Delaware and

11   has its principal place of business in California, and its

12   servicing agent "IndyMac Mortgage" has its principal place of

13   business in the State of Michigan.

14      Plaintiffs bring this action against OneWest Bank, FSB

15   ("OneWest"), as successor by acquisition of Indymac Federal

16   Bank, FSB, and IndyMac Mortgage Services,("IndyMac Mortgage"),a

17   division of OneWest Bank, FSB, assignee of "IndyMac Federal",

18   acting as loan servicer for "OneWest".

19      Plaintiffs allege as follows:

20      That Plaintiffs are without information or belief that

21   "OneWest" has record authority as the purported beneficiary

22   under the Deed of Trust being foreclosed upon to have executed a

23   Substitution of Trustee and authorized a Trustee's Sale;

24      That Plaintiffs are not in default of said Deed of Trust;

25

1    That "OneWest" and "IndyMac Mortgage" without cause and in

2   bad faith refused payments under a valid loan modification,

3   thereby materially breaching a contract;

4    That "OneWest" and "IndyMac Mortgage" refused to rescind a

5   loan transaction pursuant to TILA;

6    That "OneWest" and "IndyMac Mortgage" committed violations

7   of the Truth In Lending Act ("TILA");

8    That "IndyMac Federal", predecessor to "OneWest" and

9   "IndyMac Mortgage" has misapplied loan payments;

10    That "OneWest" and "IndyMac Mortgage" have failed to act in

11   good faith and fair dealing and have been unjustly enriched at

12   Plaintiffs expense by their actions.

13    Plaintiffs have suffered actual damages including emotional

14   distress caused by the actions of "OneWest" and "IndyMac

15   Mortgage", including the risk of suffering irreparable harm if

16   their residence is wrongfully foreclosed upon.

17                          JURISDICTION AND VENUE

18    2.   This Court has subject matter jurisdiction under 28

19   U.S.C. 1331 (general federal question);1337 (interstate

20   commerce);1367,(supplementary jurisdiction); 15 U.S.C.

21   1640(e)(TILA); and Title 12 CFR Regulation Z of the Truth in

22   Lending Act; and 28 U.S.C. 1332 (Diversity of Citizenship).  The

23   Court has authority to issue a declaratory judgment and

24   injunctive relief by virtue of 28 U.S.C. 2201.

25

1        3.    Venue is proper within this Judicial District pursuant

2    to 28 U.S.C. 1391 because a substantial part of the events or

3    omissions giving rise to the Plaintiff's claim occurred in said

4    District, payments were being made to Defendants in this

5    jurisdiction, and  Plaintiff's residence which is the subject

6    matter of this action is located in this District.

7                           **PARTIES**

8        4.    Plaintiffs Matthew D. Diamond and Susan E. Diamond are

9    natural persons, citizens of the United States, residents of the

10   State of Arizona, and at all times relevant to this action

11   husband and wife.  Plaintiffs are the owners of and at all times

12   resided in the property which is their principal place of

13   residence at 3120 E. Kesler Lane, Maricopa County, Gilbert, AZ,

14   85295 ("the subject property").

15       5.    Plaintiffs believe that at all times relevant hereto,

16   Defendant "OneWest", successor by acquisition of IndyMac Federal

17   Bank, FSB, on March 19, 2009 is, or at all times relevant to

18   this action, a Delaware Corporation with a mailing address and

19   principal place of business at 888 East Walnut Street, Pasadena,

20   CA 91101, with a registered agent for Service of Process in the

21   State of Delaware as the Corporation Trust Company, Corporation

22   Trust Center, 1209 Orange Street, Wilmington, DE 19801.

23          "OneWest" is the purported beneficiary who commenced

24   the foreclosure proceedings by authorizing the  Notice of

25   Trustee's Sale.

1    Note: IndyMac Bank, FSB, was closed by the FDIC on July 11,

2  2008, and assets transferred to IndyMac Federal Bank, FSB, which

3  agreed contractually to assume loans and promissory notes.

4    6.    Defendant "IndyMac Mortgage" is a division of

5  "OneWest". The servicing of Plaintiff's Mortgage Loan with the

6  right to collect payments, was "assigned, sold, or transferred"

7  from IndyMac Federal Bank, FSB, ("IndyMac Federal") to IndyMac

8  Mortgage Services, ("IndyMac Mortgage") a division of OneWest

9  Bank, FSB, effective March 19, 2009.

10    The Home Loan Servicing address for "IndyMac Mortgage" is

11  P.O. Box 4045, Kalamazoo, MI 49003-4045. Their address for

12  "Qualified Written Requests" per Section 6 of RESPA (12 U.S.C.

13  2605) is 6900 Beatrice Drive, Kalamazoo, MI 49009.  Said

14  defendant has no registered agent or place of business in the

15  State of Arizona.

16    7.    Defendant Mortgage Electronic Registration Systems,

17  Inc.("MERS"), is shown in the Deed of Trust being foreclosed

18  upon as the beneficiary and may be the note holder. "MERS" is of

19  record the only party who can execute a substitution of trustee

20  and authorize a trustee's sale. "MERS" is therefore a party

21  necessary to be joined.  The statutory agent for "MERS" is

22  Corporation Trust Company, Corporation Trust Center, 1209 Orange

23  Street, Wilmington, DE 19801.

24

25

1

## FACTUAL ALLEGATIONS

2      8.    Plaintiff Matthew D. Diamond acquired the residence at

3 3120 E. Kesler Ln., Gilbert, AZ ("the subject property") as a

4 married man, being the spouse of Plaintiff Susan E. Diamond, as

5 his sole and separate property, by Warranty Deed dated June 8,

6 2005, recorded July 6, 2005, in the office of the County

7 Recorder, Maricopa County, AZ, as Document No. 20050928709.

8      9.    Matthew Diamond thereafter conveyed the "subject

9 property" to himself and his spouse, Susan E. Diamond, as joint

10 tenants, by Joint Tenancy Warranty Deed dated April 27, 2009,

11 recorded April 28, 2009 in the office of the County Recorder of

12 Maricopa County, AZ, as Document No. 20090371490. Susan Diamond

13 therefore has an interest in the subject property and in this

14 lawsuit.

15      10.   Matthew Diamond on August 10, 2006, executed a Note

16 and Deed of Trust the ("subject deed of trust") which encumbered

17 the "subject property" to Taylor, Bean, and Whitaker Mortgage

18 Corp., Lender, in the amount of $540,000, recorded August 15,

19 2006, in the office of the County Recorder, Maricopa County,

20 Arizona, as Recording Number 20061086082.  ("Subject Deed of

21 Trust" attached as Exhibit A).

22      11.   Mortgage Electronic Registration Systems, Inc.

23 ("MERS") was named in the "subject deed of trust" "solely as

24 nominee for Lender and Lender's successors and assigns". Said

25

1  Deed of Trust recites that "MERS is the beneficiary under this
2  Security Instrument".

3      12. Fidelity National Title was named as the Trustee in
4  the ("subject deed of trust)".

5      13.  The original purchase money Deed of Trust by which
6  Plaintiff Matthew Diamond acquired the property was to American
7  Home Mortgage Acceptance, Inc., Lender, recorded July 6, 2005,
8  as Document No. 2005-0928711 in the office of the County
9  Recorder of Maricopa County, AZ. This Note and Deed of Trust was
10 released of record.

11      14.  Plaintiffs Matthew D. Diamond and Susan E. Diamond on
12 November 12, 2005, jointly executed a home Equity Line Of Credit
13 Deed of Trust ("the second deed of trust") to Citibank Federal
14 Savings Bank in an amount not to exceed $150,000, recorded
15 November 22, 2005, in the office of the County Recorder,
16 Maricopa County, Arizona, as Document No. 20051772153.  Said
17 Home Equity Line of Credit Deed Of Trust was subordinated to the
18 "subject deed of trust".

19      15. Plaintiffs have made and continue to make monthly
20 payments in the approximate amount of $600.00 on the "second
21 Deed of Trust" so as to prevent the lender under said "second
22 Deed of Trust" from declaring a default. (Second Deed of Trust
23 attached as Exhibit B).

24      16.  Plaintiff Matthew Diamond was past due under the
25 "subject deed of trust" and in June 2008 applied for a loan

modification from IndyMac Bank, FSB, the lender at that time.

17.   IndyMac Bank, FSB, on June 25th, 2008, in response to Matthew Diamond's request for a Loan Modification, sent him a letter acknowledging receipt of *"your complete workout package and it has been assigned to a workout analyst for review"*.  The referenced workout package contained employment and financial information requested by IndyMac Bank, FSB from Plantiffs. The letter from IndyMac Bank, FSB is attached as <u>Exhibit C</u>.

18.   IndyMac Bank, FSB, by letter dated July 10, 2008, sent Plaintiff Matthew Diamond a Loan Forbearance Plan which Plaintiff executed and returned to IndyMac Bank, FSB on July 11, 2008.  <u>(See Exhibit D)</u>

Note: IndyMac Bank, FSB, was closed by the FDIC on July 11, 2008, and assets transferred to IndyMac Federal Bank, FSB, which agreed contractually to assume loans and promissory notes.

19.   The Forbearance Plan stated that upon satisfactory completion of the payments IndyMac Bank would determine if Plaintiff Matthew Diamond qualified for a Loan Modification. The Plan provided for three payments of $2873.87 each on July 11, August 11, and September 11, 2008, which Plaintiff Matthew Diamond complied with.

20.   Plaintiff Matthew Diamond received an approved Loan Modification Agreement and letter dated October 9, 2008, from Louis Brown Jr., Loss Mitigation Analyst for "IndyMac Federal", successor to IndyMac Bank, FSB, stating that *"<u>We are pleased to</u>*

1   *notify you that you have been approved for a Loan Modification*

2   *which adds the past due payments to your loan balance".*   **(See**

3   **Exhibit E)**

4       21.   The Loan Modification Agreement stated IndyMac Federal

5   Bank, FSB was the lender. The Agreement modified the terms of

6   the "subject deed of trust" and note, and incorporated all past

7   due payments. No new funds were advanced to Plaintiff.

8       22.   The Loan Modification Approval contained the following

9   statement: "*Sign the enclosed Modification Agreement and return*

10  *with deposit amount (above) in the enclosed pre-paid return UPS*

11  *overnight envelope in order for us to receive by 10/16/2008.   If*

12  *not received by this date we will assume you are no longer*

13  *interested in this offer and we will close our file."*

14     Said loan modification further contained the following

15  statement: "*You will receive an updated statement reflecting*

16  *these changes to your loan once we receive your executed*

17  *modification agreement and system changes have been completed".*

18      23.   The Loan Modification was executed by Plaintiff

19  Matthew Diamond and returned to "IndyMac Federal" on October 13,

20  2008, by overnight delivery in the prepaid, pre-addressed

21  envelope, with proof of delivery on October 14, 2008.   **(Proof of**

22  **Delivery attached as Exhibit F).**

23      24.   Plaintiff Matthew Diamond's timely return of the

24  executed Loan Modification thus was in accordance with and

25  acceptance of the terms of "IndyMac Federals" offer.

25.   Plaintiff Matthew Diamond reasonably believed and was led to believe that he had an approved loan modification with "IndyMac Federal" as they stated in said loan modification that they were the "lender" thus implying a right of approval as the creditor, and that no further action was required on his part other than the timely return of the approved and executed loan modification.

26.   Plaintiff performed per the terms of the loan modification and a later verbal modification of the payment amount as instructed by "Indymac Federal" representatives, for a period of four months until such time as payments were refused in March, 2009, by their assignee "IndyMac Mortgage" who claimed that Plaintiff did not have a loan modification.

27.   Plaintiff Matthew Diamond's record of payments began in November 2008 when he made the first payment of $3688.52 to "IndyMac Federal" as called for in the approved Loan Modification.

28.   Matthew Diamond attempted to make the next payment of $3688.52 On December 16, 2008, but was told by "IndyMac Federal" representative "Tabitha" that a clerical error had been made in the payment amount of the Loan Modification, that it should have been $2771.16, and that the Loan Modification would be corrected and sent to him which it never was.

29.   Said representative "Tabitha" also on the date of December 16, 2008, informed Matthew Diamond to ignore a default

letter from "IndyMac Federal" dated December 10, 2008 for past due payments from August, 2008. Said alleged past due payments were prior to the Loan Modification which had incorporated past due payments.

30.  Matthew Diamond, per instructions from "IndyMac Federal" representative "Tabitha", made payment in the modified amount of $2771.16 for the month of December, 2008.

31.  Plaintiff Matthew Diamond, in order to insure that he was making the proper payment amount, verified by phone with "IndyMac Federal" representative "Gwen" on January 5, 2009, that the payment amount for January, 2009, should be the modified amount of $2771.16.

32.  Matthew Diamond thereafter made payment in the modified amount of $2771.16 on January 21, 2009, per instructions from "IndyMac Federal" representative "Gwen" on January 5, 2009

33.  Matthew Diamond received a Statement of Denial of Credit on January 10, 2009, from "IndyMac Federal" dated January 5, 2009. Matthew Diamond was informed by "IndyMac Federal" representative "Andrea" on January 10, 2009, to ignore the letter as it was sent in error and to continue making payments.

34.  Matthew Diamond made payment on February 24, 2009 in the modified amount of $2771.16 as previously instructed by "IndyMac Federal" representatives.

35.  Matthew Diamond attempted to make payment on March 16, 2009 in the amount of $2771.16. The payment was refused by "IndyMac Federal" representative "Gilbert", because he believed the loan modification was still in forbearance status.

36.  Matthew Diamond, believing a mistake had been made in the refusal of payment, again attempted to make payment on March 24, 2009.

37.  Payment was again refused this time by "IndyMac Federal" representative "Blake" on March 24, 2009, who said to contact "IndyMac Federal" loss mitigation on April 15, 2009, "because IndyMac  would have a better handle at that time as to details on Obama's foreclosure plan".  He did not know when questioned what this had to do with Plaintiffs approved loan modification.

38.  Matthew Diamond then sent a certified letter dated April 3, 2009, to IndyMac Federal Bank, FSB, Loss Mitigation, per the instructions of "IndyMac Bank" representative "Blake", with proof of delivery and a fax with transmittal confirmation. (Letter attached as Exhibit G).

39.  Matthew Diamond in his letter of April 3, 2009, provided a copy of the approved Loan Modification agreement and asserted that all payments had been made per the Loan Modification Agreement, and the later verbal modification of the payment amount by "IndyMac Federal" representatives.  Neither "IndyMac Federal" and its successors and assignees "OneWest" and

1   "IndyMac Mortgage" have provided a response to date as to this

2   letter.

3          40.   Matthew Diamond, on April 13, 2009, received a NOTICE

4   OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS from

5   IndyMac Federal Bank, FSB, to IndyMac Mortgage Services, a

6   division of OneWest Bank, FSB, dated April 10, 2009, with an

7   effective date of March 19, 2009.  (Exhibit H)

8          41.   Plaintiffs Matthew Diamond and Susan E. Diamond

9   contacted "IndyMac Mortgage" on April 13, 2009, and spoke to

10  representative "Guillermo" who informed them that they had no

11  loan modification as the "investors" had not approved it.

12         42.   Plaintiffs asked "Guillermo" what happened to payments

13  made per the approved loan modification in October, 2009.

14         "Guillermo" stated that those payments had been applied to

15  past due payments due since August 2008 since there was no loan

16  modification incorporating past due payments, and that the

17  amount necessary to cure the default as of that date was

18  approximately $30,000.

19         43.   Plaintiff Matthew Diamond, on April 22, 2009, by

20  certified mail, sent IndyMac Mortgage Services, a division of

21  OneWest Bank, FSB, now the successor to "IndyMac Federal" as the

22  loan servicer, a "Qualified Written Request" in accordance with

23  15 U.S.C.2605(e)(1)(B) to the address specified in their Notice

24  Of Assignment, Sale, or Transfer of Servicing Rights dated April

25  10, 2009.  (Letter attached as Exhibit I).

44.  Matthew Diamond's Qualified Written Request requested information as to whether the transfer to IndyMac Mortgage Services, a division of OneWest Bank, FSB, was an assignment, a sale, or a transfer, the identity of the true note holder, their address and phone number, acknowledgement of the status of the Loan Modification, and verification of payments made thereunder.

45.  Said Qualified Written Request also attached as an Exhibit the April 3, 2009 letter to "IndyMac Federal" previously referenced as Exhibit G, together with a copy of the Loan Modification Agreement and all other attachments.

46.  Proof of Delivery of said Qualified Written Request to "IndyMac Mortgage" was made by USPS on April 27, 2009.

47.  "IndyMac Mortgage" did not acknowledge Plaintiff Matthew Diamond's Qualified Written Request within 20 days as required by 15 U.S.C. 2605(e)(1).

48.  Matthew Diamond, despairing of ever receiving any information from "IndyMac Mortgage" and worried that his loan was in default since payments had been refused despite previous statements from "IndyMac Federal" representatives that they had an approved loan modification,  researched the law relative to the issues.

49.  Plaintiffs, in reviewing transactions relevant to the loan modification, determined that "IndyMac Federal" was required to provide Plaintiff with two copies each of a completed Notice of Right of Rescission as to the loan

modification per 15 U.S.C. 1635(a) and 12 CFR 226.23(b(1)

Regulation Z of 'RESPA".

50.   The Loan Modification of the "subject deed of trust"
was "*a consumer credit transaction in which a security interest
arising by operation of law, is or will be retained or acquired
in any property which is used as the principal dwelling of the
person to whom credit is extended"* as provided by 15 U.S.C.
1635(a).

51.   Plaintiff therefore had a Right of Rescission as set
forth in 15 U.S.C. 1635(a)(b) and 12 CFR 226.23(a), and as
further provided by section (f)(2) Regulation Z of "RESPA".

52.   The loan modification of the "subject deed of trust"
was not a loan made for the purchase of a home or a refinance or
consolidation since the "subject deed of trust" remained in
place. The loan modification was therefore not exempt from the
right of rescission as provided by 15 U.S.C. 1635(e) and 12 CFR
226.23(f)(2).

53.   "IndyMac Federal" failed to provide the two Notices of
Right of Rescission at any time before, during, or after the
Loan Modification as required by 15 U.S.C. 1635(a) and  12 CFR
226.23(b(1).

54.   Plaintiff also has additional rescission rights by
virtue of the foreclosure proceedings instituted against him as
afforded by 15 U.S.C. 1635(i)which states in part "*in addition
to any other right of rescission available under this section*

*for a transaction, after the initiation of any judicial or non-judicial foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section".*

55. Rescission rights against "OneWest" and "IndyMac Mortgage" are further provided by 15 U.S.C. 1641(c) which provides that *"any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation".*

56. Matthew Diamond was entitled to a 3 year right of rescission after the loan modification transaction on October 9, 2008, since disclosures (the Notice of Right To Rescind) were never delivered to Matthew as provided by 15 U.S.C. 1635(f).

57. Matthew Diamond, by certified letter on June 1st, 2009, with proof of delivery on June 3rd, 2009, in accordance with the provisions of 15 U.S.C. 1635(b), and 12 CFR 226.23(a) Regulation Z of "RESPA", sent "OneWest" and "IndyMac Mortgage", a  Notice of Rescission of the Loan Modification dated October 9, 2008, and attached thereto the  April 3rd letter and Qualified Written Request letter dated April 22nd previously sent "IndyMac Federal" and "IndyMac Mortgage", and referenced herein as Exhibits G and I respectively.  <u>(Rescission Letter Exhibit J).</u>

58.   The rights and obligations of Matthew Diamond and "OneWest" re rescission per the provisions of 15 U.S.C. 1635(b) are fully set forth as follows:

*"When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission.  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  If the creditor has delivered any property to the obligor, the obligor may retain possession of it.  Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor.  If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.  The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."*

59. Plaintiff Matthew Diamond's rescission letter, in accordance with the provisions of 15 U.S.C. 1635(b), stated that upon performance by "OneWest Bank" and "IndyMac Mortgage" of the return of all money and payments expended by Plaintiffs as a result of the Loan Modification, including statutory damages per 15 U.S.C. 1640(a), he would tender *"the fair market value of the property or the property itself."*

60. Plaintiffs tender of the *"fair market value of the property or the property itself"* met the requirement in 15 U.S.C. 1635(b) in that upon performance of the creditor's obligation under this section *"the obligor shall tender the property to the obligor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value".*

61. Some jurisdictions have held that return of the property in kind or tender of the property in kind requires that the obligor provide evidence that he can provide said tender. Some jurisdictions have further held that return of the property in kind requires the obligor to return the amount of the loan funds advanced by lender for the rescission to be effective.

62. Plaintiff argues that he was prepared and able to return the "subject property" to lender upon performance by "OneWest" of return of all payments made and charges incurred, including statutory damages, from and after the date of the loan modification, and that this constituted *"its reasonable value".*

63.   The loan amount of the "subject deed of trust" was $540,000.   The modified loan amount per the loan modification was $553,794.64. No new funds were advanced to Plaintiff. The current property value of the "subject property" is $244,000.00 due to the collapse of the housing market.

64.   Plaintiff argues any requirement that he return the loan amount of $553,794.64 under the loan modification or the amount of $540,000 due under the "subject deed of trust" to "OneWest" in order to effect his rescission rights of the loan modification are *inequitable* as provided by 15 U.S.C. 1635(b) and would unjustly enrich said Defendants as no new funds were given to Plaintiff by virtue of the loan modification.

"OneWest" in a foreclosure sale would likely get far less than the loan amount in the loan modification or the "subject deed of trust". The inequity is obvious in that if Plaintiff is required to pay in full  either of the above loan amounts to "OneWest" in order to effect his loan modification rescission rights, "OneWest" would thereby benefit by virtue of their breach of contract, failure to rescind the loan modification, the TILA violations, wrongful foreclosure, and be unjustly enriched thereby.

65.   "One West" was required to return the money demanded by Matthew Diamond in his rescission letter as to all payments made, charges incurred as a result thereof, together with statutory damages, of the loan modification within 20 days as

required by 15 U.S.C. 1635(b) and 12 CFR 226.23(d) Regulation Z and to take any action necessary to reflect the termination of the security interest created by the loan transaction but did not and later refused to do so.

66.   The Right of Rescission under 15 U.S.C. 1635(b) is clear in that Rescission of the loan transaction (the Loan Modification) not only cancels a security interest in the property but it also cancels any liability on the part of the obligor to pay finance and other charges, including accrued interest, points, and broker fees.

67.   15 U.S.C. 1635(b) further provides that if the creditor does not return the money as demanded by the obligor "ownership of the property vests in the obligor without obligation on his part to pay for it."

As noted by the Official Staff Commentary, the creditor's interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected." (Official Staff Commentary 226.15(d(1)-1, 226.23(d)(1)-1).)

68.   While the forfeiture of the security interest of "OneWest" may seem a harsh punishment, the Truth In Lending Act was designed to protect consumers from the rampant transgressions against them prevalent in the mortgage lending industry that are reported every day in the newspapers. These transgressions require penalties that are sufficiently harsh to

1  deter violations by lenders and were so designed by the Congress

2  in enacting the Truth In Lending laws.

3       69.   "OneWest", by letter dated June 11, 2009, from Elke

4  Poerschke, Vice President, Corporate Compliance, "IndyMac

5  Federal Bank" [sic], received by Matthew Diamond on June 19,

6  2009, denied he had a right to rescind the loan modification and

7  that a Notice of Right to Rescind the loan modification was not

8  required to be provided. (Letter Exhibit K).

9       70.   Matthew Diamond notes that said letter dated June 11,

10 2009, was on the letterhead "IndyMac Federal Bank" and that the

11 assets of IndyMac Federal Bank had been assigned, sold, or

12 transferred to IndyMac Mortgage Services, a division of OneWest

13 Bank, FSB, on March 19, 2009. Plaintiffs assume that the

14 incorrect letter head was apparently used by Ms. Poerschke.

15      71.   Matthew Diamond sent a follow up letter dated June 22,

16 2009, to the previously referenced Elke Poerschke, Vice

17 President, Corporate Compliance, disagreeing with her conclusion

18 that the Loan Modification was not subject to rescission.

19      72.   "IndyMac Mortgage" thereafter responded to Matthew

20 Diamond's Qualified Written Request by letter dated April 30,

21 2009, postmarked June 18, 2009, and received by Plaintiffs on

22 June 22, 2009.

23      Plaintiffs note that said response was dated April 30,

24 2009, only 3 days after certified receipt by them of the

25 Qualified Written Request on April 27, 2009, and that they could

1   not therefore have spent a great deal of time researching the

2   request. **(Response Exhibit L)**.

3        73.   "IndyMac Mortgage" refused in their response to

4   Matthew Diamond's Qualified Written Request to provide

5   information on the identity of the true note holder, their

6   address or phone number, and the status or even existence of

7   Plaintiff's loan modification and payments made thereunder.

8        74.   The response of "IndyMac Mortgage" to Plaintiffs

9   Qualified Written Request was that "*these requests go well*

10  *beyond what is required to be produced pursuant to a Qualified*

11  *Written Request and will not be provided.*"

12       75.   The response from "IndyMac Mortgage" to the Qualified

13  Written Request further contained the following contradictory

14  and illogical statement which did not disclose information as to

15  the true note holder or payments made under the loan

16  modification: "*The investor on your loan is Indymac.  Any*

17  *questions regarding your loan should be addressed directly to*

18  *IndyMac Mortgage Services as we are responsible for the*

19  *servicing of this loan.  The investor should not be contacted*

20  *directly.*" ??     (Question Marks and underlining added for

21  emphasis).

22       Matthew Diamond did send the Qualified Written Request to

23  "IndyMac Mortgage Services" as the servicer in the address they

24  indicated but could not make any sense out of what "IndyMac

25  Mortgage" was trying to say.

76.  "IndyMac Mortgage" did provide in their response to the Qualified Written Request information relating to the "subject deed of trust" but did not provide any information as to the payment status of the loan modification or even of its existence although Plaintiff had provided a copy in his Qualified Written Request.

77.  "IndyMac Mortgage" also provided in their response to the Qualified Written Request an accounting of all payments made as requested by Plaintiff.  (Exhibit M).

78.  The accounting of payments made by Plaintiff, provided by "IndyMac Mortgage", shows that at no time after the loan modification approval on October 9, 2008, were any payments credited to or reflected as having been made for the loan modification. Said payments were continually and incorrectly shown as past due payments for arrears prior to the loan modification dating back to August, 2008. Said loan modification, however, by its terms incorporated all past due payments.

79.  Said accounting statement shows a misapplication of all payments made subsequent to the loan modification beginning in November, 2008, and continuing through February, 2009.  In March 2009 payments were refused unless Plaintiff paid an alleged default amount of $27,000.00 at that time for payments allegedly due from September, 2008, to March, 2009.

80.  "IndyMac Federal", and their successor and assignee "OneWest" and "IndyMac Mortgage" knew or should have known based on their accounting statement that no payments had been credited to the approved loan modification, and that said information had been withheld from Plaintiff for a period of four months during which he was induced to make payments based on his belief they were going towards an approved loan modification.

81.  "IndyMac Federal" negligently represented to Plaintiff Matthew Diamond that his payments were being credited to an approved loan modification for a period of four months, thereby inducing him to continue making payments when they knew or should have known based on their own accounting statement that such was not true. "OneWest and "IndyMac Mortgage" continued to assert that Plaintiff had no loan modification and was in default for $30,000.

82.  "IndyMac Mortgage", in refusing to provide the name of the true note holder, its address and telephone number, the status or even acknowledgement of Plaintiffs loan modification, and whether the transfer to IndyMac Mortgage Services was in fact a sale, a transfer, or an assignment, failed to comply with 15 U.S.C. 2605(e) re Servicing of mortgage loans and administration accounts.  Their disclosure that "IndyMac Mortgage" was the "investor" did not disclose that "IndyMac Mortgage" was in fact the true note holder.

83.   After receipt of the response of "IndyMac Mortgage" to
his Qualified Written Request on June 22, 2009, Matthew Diamond
received another letter from Elke Poerschke, Vice President,
Corporate Compliance, dated July 6, 2009, this time on a OneWest
Bank, FSB, letterhead.

Ms. Poerschke, despite that fact that Matthew Diamond had
already received a response from "IndyMac Mortgage" to his
Qualified Written Request", stated that "Our servicing group is
in the process of researching this matter and will provide you
with their finds as soon as possible."

84.   On July 10, 2009, five days after the letter from Ms.
Poerschke was received by Plaintiff, "OneWest", as the purported
"present beneficiary" under the "subject deed of trust",
recorded a Substitution of Trustee appointing Quality Loan
Service Corporation, a California Corporation, as the Trustee
under said "subject deed of trust", recorded  as Document No.
20090626220. (Exhibit O).

85.   No assignment from, "MERS", the record beneficiary
under the "subject deed of trust", to "OneWest" as successor
beneficiary, was found of record.

86.   Quality Loan Service Corporation, ("Quality Loan")
thereafter without authority from "MERS", the record beneficiary
on July 10, 2009, recorded a Notice Of Trustee's Sale,
authorized by "OneWest" as the purported present beneficiary, as
Document No. 20090636221, in the office of the County Recorder

of Maricopa County, AZ.  The date of sale was set for October 9, 2009. (Exhibit P).

87.   Thereafter MetLife Auto and Home informed Plaintiffs that the Mortgagee had failed to pay the required premium and that the policy would be cancelled effective August 7, 2009.

**FIRST CAUSE OF ACTION**

**(Invalid Notice of Trustee's Sale)**

88.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

89.   Arizona Revised Statute 33-801 par. 1 states as follows: *"Beneficiary means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest."*

90.   "MERS" as nominee was named "in the "subject deed of trust" as the beneficiary. No assignment of record for the beneficial interest was found from "MERS" as beneficiary to "OneWest" as beneficiary making them successor in interest to "MERS".

91.   Fidelity National Title was named as the original trustee in the "subject deed of Trust" with the power of sale as conferred by Arizona Revised Statute 33-807 et. seq.

92.   The Substitution of Trustee" by OneWest", as the purported "present beneficiary", who appointed "Quality Loan" as successor trustee, had no legal effect since "Quality Loan" is not the Trustee in the "subject deed of trust" and "OneWest" had

no record interest as successor beneficiary to appoint "Quality Loan" as successor trustee with a power of sale.

93.    The Trustee under a deed of trust acts at the direction of the beneficiary or successor beneficiary in effecting a sale of the property.

94.    Therefore the Notice of Trustee's Sale by "Quality Loan" had no legal effect since they were not authorized to act by the record beneficiary and their Notice of Trustee's Sale was invalid.

95.    The original Promissory Note under a Deed of Trust is evidence of the debt owed the beneficiary under the Deed of Trust while the Deed of Trust itself is only security for the Promissory Note.  In order to effect the right to foreclose, the beneficiary must have and produce the original promissory note as evidence of the indebtedness to him or evidence that it was assigned to him.

96.    Plaintiffs have suffered damages in an amount to be determined at trial by virtue of the Notice of Trustee's Sale if "OneWest" cannot produce evidence that it is the record "present beneficiary" under the "subject deed of trust" and furnish the original Promissory Note under the "subject deed of trust" as evidence of the indebtedness to them.

## SECOND CAUSE OF ACTION

### (BREACH OF CONTRACT)

97.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

98.   Plaintiff Matthew Diamond's Loan Modification was a valid contract with "IndyMac Federal". "OneWest" and "IndyMac Mortgage", as successor and assignee respectively of "IndyMac Federal", were contractually bound by the loan modification.

99.   "IndyMac Federal" sent an approved Loan Modification to Matthew Diamond dated October 9, 2008, in which they represented themselves as "Lender" and thus the creditor with the right of approval and the right to receive payments.

100.  The loan modification was a loan transaction which modified the terms of the "subject deed of trust". Final approval of the loan modification was conditioned solely on Matthew Diamond's signed return of the Loan Modification to "IndyMac Federal" by October 16, 2008. Matthew Diamond complied with the offer and has proof of delivery on October 14, 2008.

101.  Said loan modification further contained the following statement: *"You will receive an updated statement reflecting these changes to your loan once we receive your executed modification agreement and system changes have been completed"*. Plaintiff never received said updated statement.

102.  Matthew Diamond performed per the terms of said Loan Modification by making one payment of $3688.52 in November, 2008, and three payments each of $2771.16 in December, 2008, and January and February, 2009, per verbal modifications to the

1   payment amount by "IndyMac Federal" representatives. Payments

2   were accepted at all times by "IndyMac Federal".

3       103. Parol evidence as to the verbally modified payment

4   amounts by "IndyMac Federal" and acceptance thereof by them is

5   evidence of a valid change of terms to the loan modification by

6   virtue of the following Arizona Revised Statutes:

7       **47-2202. Final written expression: parol or extrinsic**

8   **evidence**

9       *Terms with respect to which the confirmatory memoranda of*

10  *the parties agree or which are otherwise set forth in a writing*

    *intended by the parties as a final expression of their agreement*

11  *with respect to such terms as are included therein may not be*

    *contradicted by evidence of any prior agreement or of a*

12  *contemporaneous oral agreement but may be explained or*

13  *supplemented:*

14  *    1. By course of performance, course of dealing or usage of*

    *trade (section 47-1303); and*

15  *    2. By evidence of consistent additional terms unless the*

16  *court finds the writing to have been intended also as a complete*

    *and exclusive statement of the terms of the agreement.*

17      **47-1303. Course of performance; course of dealing and usage**

18  **of trade**

19  *    A. A "course of performance" is a sequence of conduct*

20  *between the parties to a particular transaction that exists if:*

    *    1. The agreement of the parties with respect to the*

21  *transaction involves repeated occasions for performance by a*

22  *party; and*

23  *    2. The other party, with knowledge of the nature of the*

    *performance and opportunity for objection to it, accepts the*

24  *performance or acquiesces in it without objection.*

25

104. The loan modification therefore was a valid contract with an offer, acceptance, mutual consent, consideration consisting of a benefit to both parties, performance, legality, and competent parties.

105. "IndyMac Mortgage", successor in interest to "IndyMac Federal" and contractually bound by the terms of the loan modification, twice wrongfully refused  tender of loan modification payments or payments in any amount by Matthew Diamond, on March  22nd and 24th, 2009, since he owed an alleged default amount of $30,000 to cure the default and resume a payment schedule prior to the loan modification.

106. The refusal of payments twice by "IndyMac Mortgage" was based on their claim by an "IndyMac Mortgage" representative in April, 2009, that Plaintiff had no approved loan modification since it had not been approved by "investors" and that Plaintiff owed an alleged default amount of $30,000.00 for back payments prior to and continuing from the date of the loan modification. This was incorrect as the loan modification, by its terms, had incorporated all past due payments.

107. No mention of a necessary further "investor" approval was made in said loan modification or in the accompanying approval letter to the loan modification from "IndyMac Federal".

108. A valid loan modification and contract was created however even if "IndyMac Federal" was not the lender and creditor with the right of approval as evidenced by Matthew

Diamond's belief to his detriment that he had an approved loan modification, by his payments and performance thereunder, and by acceptance of said payments and performance by "IndyMac Federal" for a period of four months. Said Loan Modification was therefore enforceable and valid in any case by virtue of promissory estoppel and detrimental reliance.

109. Matthew Diamond, with a belief that he had an approved loan modification which incorporated past due payments, and in detrimental reliance, made payments under the loan modification believing that he was no longer at risk of foreclosure.

110. Matthew Diamond, further in the belief that he had an approved loan modification and to his detriment, made and continues to make payments under the "second deed of trust" which he would not have done absent his belief that he had an approved loan modification.

111. Without his belief that he had an approved loan modification Matthew Diamond would have been in default of the "subject deed of trust" and it would have been pointless at that time to otherwise continue making payments on the "second deed of trust".

112. "OneWest", as successor to "IndyMac Federal" and as purported present beneficiary under the "subject deed of trust", and "IndyMac Mortgage", assignee of "IndyMac Federal" as the loan servicer, are therefore estopped from denying that Matthew

1  Diamond does not have an approved loan modification or valid

2  contract.

3      113. Matthew Diamond has suffered damages from the breach

4  of contract, continuing damages in having paid and continuing to

5  pay monthly payments under the "second deed of trust" in order

6  to prevent foreclosure under the "second deed of trust", and

7  other damages including those from foreseeable consequences by

8  "OneWest", in an amount to be determined at trial.

9  THIRD CAUSE OF ACTION

10  (Breach of Covenant of Good Faith and Dealing)

11      114. Plaintiff incorporates all preceding paragraphs as

12  though fully set forth herein.

13      115. Arizona Courts have long held that every contract

14  contains an implied duty to act in good faith and fair dealing

15  as held by the Arizona Supreme Court in _Wells Fargo Bank v._

16  _Arizona Laborers, Teamsters and Cement Masons Local No. 395_

17  _Pension Trust,_ 201 Ariz. 474, 38 P.3d 12 (2002).

18      116. A covenant of good faith and fair dealing existed

19  between Plaintiff Matthew Diamond and "OneWest" by virtue of the

20  loan modification agreement dated October 9, 2009 and

21  performance thereafter for four months by Matthew Diamond and

22  acceptance of performance by "IndyMac Federal", predecessor to

23  "OneWest", for the four month period.

24      117. "IndyMac Mortgage" and "OneWest", both successors in

25  interest to "IndyMac Federal", breached the implied covenants of

1  good faith and dealing when in bad faith it declared Plaintiff

2  had no loan modification, and refused payments.

3      118. "OneWest" thereafter declared a default and commenced

4  foreclosure proceedings under the "subject deed of trust".

5      119. "IndyMac Federal" in October, 2008, represented to

6  Matthew Diamond that they were the lender in an approved loan

7  modification agreement dated October 9, 2008.

8      120. Subsequent representations made by "IndyMac Federal"

9  representatives to Matthew Diamond in November and December,

10  2008, and in January and February, 2009, were as follows:

11      a. that he had an approved loan modification

12  agreement;

13      b. that he was to continue making payments which he

14  did for a period of four months with acceptance of payments by

15  "IndyMac Federal";

16      c. that he should ignore letters of defaults.

17      121. Matthew Diamond thus had a valid contract and loan

18  modification with an offer and acceptance, consideration,

19  performance, and a meeting of the minds as previously argued in

20  Plaintiffs Second Cause of Action incorporated herein by

21  reference.

22      122. Matthew Diamond also had the right of contract

23  enforcement by virtue of promissory estoppel and detrimental

24  reliance as also argued in Plaintiffs Second Cause of Action

25  incorporated by reference hereby.

123. "Onewest" and "IndyMac Mortgage" in March, 2009, became the successor and assignee, respectively, of "IndyMac Federal" and thereby assumed the rights and obligations under the loan modification dated October 9, 2008.

124. In March, 2009, "IndyMac Mortgage" wrongfully refused two payment tenders under the loan modification.

125. In April, 2009 their representative "Guillermo" declared over the phone to Plaintiffs Matthew Diamond and Susan Diamond that there was no loan modification since the "investors" had not approved it, and that Matthew Diamond was in arrears for $30,000 for payments due prior to the loan modification which had incorporated all past due payments.

126. Thereafter Matthew Diamond by letter dated April 3, 2009, and Qualified Written Request dated April 22, 2009, informed "IndyMac Mortgage" that he had an approved loan modification, provided a copy in said correspondence, and stated that had made payments thereunder.

126. At no time thereafter did "IndyMac Mortgage" or "OneWest" inform Matthew Diamond in writing or otherwise that he did not have an approved loan modification or even acknowledge its existence and payments thereunder.

127. "IndyMac Mortgage" by letter dated April 30, 2009, postmarked June 18, 2009, in response to Plaintiff's Qualified Written Request, stated that the name of the "investor" was "IndyMac Mortgage".

128. Thus "OneWest" and "IndyMac Mortgage" as the creditor and successor in interest respectively  to "IndyMac Federal", the lender and creditor under the loan modification, could not deny that that there was no approved loan modification agreement since the "investors", who was IndyMac, had not approved it.

129. "OneWest", as purported beneficiary under the "subject deed of trust" on July 10, 2009, thereafter asserted its alleged claim that there was no approved loan modification, by claiming default prior to the approved loan modification and alleging a default amount of $30,000 to cure, and by causing a Notice of Trustee's Sale to be recorded on the "subject deed of trust in July, 2009.

130. "OneWest" acted in bad faith and in an egregious, arbitrary, capricious, and unreasonable manner as follows:

(a)  by refusing payments under a valid loan modification;

(b)  by declaring that Plaintiff had no loan modification;

(c)  by not providing Plaintiff any evidence of why he had no loan modification;

(d) by declaring a default in the amount of $30,000 since there was no loan modification;

(e)  by commencing foreclosure proceedings.

131. Matthew Diamond was thereby deprived of the benefits promised him under the loan modification and has suffered damages and consequental damages foreseeable by "OneWest" as a result of their breach in an amount to be determined at trial.

132. Plaintiffs further argue that they are entitled to punitive and compensatory damages as a result of the breach by "OneWest".

133. The Arizona Supreme Court held in the previously referenced *"Wells Fargo Bank v.Arizona Laborers and Cement Masons Local No. 395 Pension Trust Fund"* that a breach of covenant claim is contractual unless there is a special relationship between the parties arising from elements of public interest, adhesion, and fiduciary relationship, indicating that otherwise punitive damages would not be available.

134. Although no fiduciary relationship exists between the parties, Plaintiff argue that at least an equitable relationship exists to which "OneWest" owed a duty, and further that this is a matter of public interest in that lenders who wrongfully force property owners into foreclosure places the entire neighborhood at risk of losing property values, and thereby increases the likelihood of more foreclosures.

135. Further, it is a well known practice in the mortgage lending industry that many lenders have offered consumers forbearance agreements and loan modifications which the consumer satisfactorily complied with and made payments thereunder, only to have the lenders, in order to squeeze the last penny out of the consumer, later fraudulently declare default and then initiate foreclosure proceedings.

1

## FOURTH CAUSE OF ACTION

2

### (Non-Default of Deed of Trust)

3      136. Plaintiff incorporates all preceding paragraphs as

4   though fully set forth herein.

5      137. Plaintiff Matthew Diamond was not in default of the

6   Deed of Trust and Loan Modification since he had performed under

7   the approved loan modification for four months with acceptance

8   of payments by "IndyMac Federal".

9      138. Thereafter "IndyMac Mortgage", assignee of "IndyMac

10  Federal", wrongfully twice refused tender of payment and

11  performance by Plaintiff, claiming that he had no loan

12  modification since "investor" approval had not been obtained.

13     139. "IndyMac Mortgage" thereby materially breached the

14  loan modification without cause discharging and excusing

15  Plaintiff from further performance.

16     140. Arizona Revised Statutes provide the following in the

17  event of a breach:

18  <u>47-3603. Tender of payment</u>

19
       *A. If tender of payment of an obligation to pay an*
20  *instrument is made to a person entitled to enforce the*
   *instrument, the effect of tender is governed by principles of*
21  *law applicable to tender of payment under a simple contract.*

22     *B. If tender of payment of an obligation to pay an*
   *instrument is made to a person entitled to enforce the*
23  *instrument and the tender is refused, there is discharge, to the*
   *extent of the amount of the tender, of the obligation of an*
24  *indorser or accommodation party having a right of recourse with*
   *respect to the obligation to which the tender relates.*
25

  Case 2:09-cv-01593-FJM   Document 1   Filed 08/03/09   Page 38 of 50

**47-3604. Discharge by cancellation or renunciation**

*A. A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:*

*1. By an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation or cancellation of the instrument, cancellation or striking out of the party's signature or the addition of words to the instrument indicating discharge.*

141. Plaintiff Matthew Diamond was further not in default of the Deed of Trust and Loan Modification since "IndyMac Federal" had negligently misapplied payments Matthew Diamond made in his belief that they were for a loan modification, to alleged defaults prior to the loan modification which had incorporated all past due payments.

142. Matthew Diamond has suffered damages to be determined at trial by virtue of the wrongful default claimed by "OneWest" and by the filing of a Notice of Trustee's Sale.

### FIFTH CAUSE OF ACTION

### (Rescission of Loan Transaction)

143. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

144. Plaintiff's loan modification of the "subject deed of trust" was a valid contract, a loan transaction with no new funds advanced, and an extension of credit with new terms subject to Plaintiff's right to rescind per 15 U.S.C.

1635(a)(b); 12 CFR 226.23(a) and (f)(2); 15 U.S.C. 1639(a)(1), (b)(1)(2), and (j); and 15 U.S.C. 1635((i).

145. 12 CFR 226.23(f)(2) further states:

*"The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation."*

146. "IndyMac Federal", predecessor in interest to "OneWest" and "IndyMac Mortgage" did not provide two copies of the Notice of Right to Rescind the loan transaction (the loan modification), to Plaintiff Matthew Diamond as required by 12 CFR 226.23(b(1)Regulation Z of TILA.

147. Rescission rights against "OneWest" as creditor are provided by 15 U.S.C. 1641(c) re assignees and 15 U.S.C. 1635(i) re foreclosure proceedings.

148. Matthew Diamond timely rescinded the loan transaction (the loan modification) as required by 15 U.S.C. 1635(b) with certified notifications to "OneWest" as creditor and "IndyMac Mortgage" as the loan servicer.

149. Matthew Diamond tendered return of the "subject property" to Defendants upon compliance by said Defendants with the requirement that they return sums due Plaintiff as a result of rescission of the loan modification together with statutory damages.

150. Matthew Diamond's tender of return of the "subject property" met the equitable and reasonable guidelines of 15 U.S.C. 1635 which states that:

*"Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."*

151. "OneWest" did not return the money within 20 days as requested by Plaintiff and thereafter refused to return to Plaintiffs the sums due from the rescinded loan modification as required by 15 U.S.C. 1635(b). Defendants further did not acknowledge tender of the "subject property".

152. Therefore, pursuant to 15 U.S.C. 1635(b) and 12 CFR 226.23(d) *"ownership of the property vests in the obligor without obligation on Plaintiff's part to pay for it."*

153. Plaintiff argues that even if the rescission of the loan modification does not entitle him to ownership of the property free and clear of the security interest if "OneWest" does not return the money, it does entitle him nonetheless under "TILA" to actual damages, return of all sums expended by virtue of the loan modification, including consequental damages and statutory damages to be proven at trial.

154. Matthew Diamond has suffered actual damages and statutory damages by virtue of the failure of "OneWest" to

1  rescind the loan transaction and to return sums claimed by

2  Plaintiff attributed to the loan modification.

3                    SIXTH CAUSE OF ACTION

4                (Violations of Truth in Lending)

5      155. Plaintiff incorporates all preceding paragraphs as

6  though fully set forth herein.

7      156. "IndyMac Mortgage" violated 15 U.S.C.2605(e)(f) re

8  Plaintiffs certified letters and Qualified Written Request in

9  that they refused by their response dated April 30, 2009,

10 postmarked June 18, 2009, to provide the  name of the true note

11 holder, its address and phone number, the status or existence of

12 Plaintiff's loan modification, whether the transfer to them by

13 "IndyMac Bank" had in fact been a transfer, an assignment, or a

14 sale, and did not respond to Plaintiffs inquiry as to payments

15 made under the loan modification. "IndyMac Federal" simply

16 provided a copy of all payments made with no explanation as to

17 why they had not been credited to the loan modification.

18     157. Matthew Diamond has suffered actual damages and is

19 entitled to statutory damages by virtue of the failure of

20 "IndyMac Mortgage" to provide information as required by  15

21 U.S.C.2605(e)(f).

22                  SEVENTH CAUSE OF ACTION

23                   (Unjust Enrichment)

24     158. Plaintiff Matthew Diamond incorporates all preceding

25 paragraphs as though fully set forth herein.

[Summary of pleading] - 41

159. Plaintiff argues this cause of action as an alternative remedy should Plaintiff's other causes of action in this action be found to not constitute remedies at law.

160. Plaintiff entered into a loan modification agreement dated October 9, 2008, with "IndyMac Federal", predecessor in interest to "OneWest"".

161. Plaintiff made four payments to "IndyMac Federal" in the months of November and December, 2008, and in January and February, 2009 in the belief that he had a valid loan modification.

162. "OneWest", successor in interest to "IndyMac Federal", denied Plaintiff had a valid loan modification agreement, wrongfully retained all payments and credited them to arrears prior to the loan modification Plaintiff believed he had which incorporated all past due payments.

163. Plaintiff was led to believe by "IndyMac Federal" in the four months of his payments that said payments were being credited to his loan modification.  Plaintiff would not have made said payments otherwise.

164. "OneWest" and "IndyMac Mortgage" were made aware of Plaintiffs claims that he had a valid loan modification throughout April to June, 2009.

165. "OneWest" and "IndyMac Mortgage" ignored said claims by Plaintiff and commenced foreclosure proceedings.

1   166. "OneWest" has been unjustly enriched by Plaintiffs

2   payments.

3                    **RELIEF REQUESTED**

4       **WHEREFORE,** Plaintiffs prays for judgment against "OneWest"

5   as follows:

6       1.   **For the First Cause of Action: (Invalid Notice)**

7       A.   That the Trustee's Sale commenced by "OneWest" be

8   enjoined/and or cancelled by the Court unless "OneWest" provides

9   documentation that it had authority as the record beneficiary to

10  authorize said sale and if so to produce the original promissory

11  note evidencing the indebtedness to them;

12      B.   For an award of compensatory damages, punitive damages

13  and restitution, if any, in an amount to be determined at trial

14  if "OneWest" cannot provide said documentation.

15      2.   **For the Second Cause of Action (Breach of Contract)**

16      A.   For an award of actual damages, consequental damages,

17  and damages foreseeable by "OneWest" as a result of its breach

18  of contract, including all payments Plaintiff has made and

19  continues to make under the "second deed of trust" in order to

20  prevent its default, until such time as the court has made its

21  determinations in this Complaint.

22      3.   **For the Third Cause of Action (Breach of Good Faith)**

23      A.   For an award of actual damages, consequental damages,

24  and damages foreseeable by "OneWest" as a result of its breach

25  of contract, including all payments Plaintiff has made and

1  continues to make under the "second deed of trust" in order to

2  prevent its default, until such time as the court has made its

3  determinations in this Complaint as set forth in Plaintiff's

4  Second Cause of Action.

5        <u>Together with an award of punitive damages</u> in such an

6  amount that will deter "OneWest" from such future actions.

7        4.   <u>For the Fourth Cause of Action:(Non-Default)</u>

8        A.   That the Court order "OneWest" to cancel the

9  "Trustee's Sale on the "subject deed of trust" since there was

10 no default by Plaintiffs;

11       B.   For an award of compensatory damages, punitive damages

12 and restitution, if any, in an amount to be determined at trial.

13       5.   <u>For the Fifth Cause of Action(TILA Rescission):</u>

14       A.   That the security interest in the loan modification

15 and/or the "subject deed of trust" be declared void;

16       B.   That "OneWest" be ordered to take all action necessary

17 to void the security interest in Plaintiff's "subject property"

18 created by the Loan Modification and "subject Deed of Trust";

19       C.   That the Court Order the return to Plaintiffs of any

20 money or property given by the Defendants to anyone, in

21 connection with the Loan Modification, to include:

22            a.   Any actual damage sustained by Plaintiffs per 15

23 U.S.C. 1640(a)(1);

24            b.   Twice the amount of any finance charge in

25 connection with the transaction per 15 U.S.C.1640(a)(2)(A)(iii);

c.   Statutory damages of $2,000.00 per 15 U.S.C. 1640 (a)(2)(iii);

d.   Costs of this action, together with any reasonable attorney's fees Plantiffs may incur, per 15 U.S.C. 1640(a)(3).

6.   **For the Sixth Cause of Action (TILA Violations):**

A.   Damages as a result of the refusal of "IndyMac Mortgage" to provide information in accordance with 15 U.S.C.2605(e)(f) re Plaintiffs Qualified Written Request for information as to the true note holder, status of the loan modification and payments made thereunder, and information as to the sale, transfer, or assignment to them, as follows:

a. 15 U.S.C. 2605(f)(1)(A): any actual damages to the borrower as a result of the failure;

b. 15 U.S.C. 2605(f)(1)(B): any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

c. 15 U.S.C. 2605(f)(3): in addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

B.   Damages as a result of the failure of "IndyMac Federal", predecessor to "OneWest" and "IndyMac Mortgage", to

1   provide the Notice of Right of Rescission at any time before,

2   during, or after the Loan Modification as required by 15 U.S.C.

3   1635(a) and  12 CFR 226.23(b(1), as follows:

4           a.   Any actual damage sustained by Plaintiffs per 15

5   U.S.C. 1640(a)(1);

6           b.   Twice the amount of any finance charge in

7   connection with the transaction per 15 U.S.C.1640(a)(2)(A)(iii);

8           c.   Statutory damages of $2,000.00 per 15 U.S.C. 1640

9   (a)(2)(iii);

10          d.   Costs of this action, together with any

11  reasonable attorney's fees Plaintiffs may incur, per 15 U.S.C.

12  1640(a)(3).

13      C.   Damages for the failure of "OneWest" and "IndyMac

14  Mortgage" to rescind the loan modification as required by 15

15  U.S.C. 1635, as follows:

16          a.   Any actual damage sustained by Plaintiffs per 15

17  U.S.C. 1640(a)(1);

18          b.   Twice the amount of any finance charge in

19  connection with the transaction per 15 U.S.C.1640(a)(2)(A)(iii);

20          c.   Statutory damages of $2,000.00 per 15 U.S.C. 1640

21  (a)(2)(iii);

22          d.   Costs of this action, together with any

23  reasonable attorney's Plaintiffs may incur, per 15 U.S.C.

24  1640(a)(3).

25

D.    Award such other relief as the court deems proper
including any and all relief as provided by 15 U.S.C. 1635(g)
which provides that *"In any action in which it is determined
that a creditor has violated this section, in addition to
rescission the court may award relief under section 1640 of this
title for violations of this subchapter not relating to the
right to rescind."*

E.    Damages as an actual damage under TILA in the amount
of all payments Plaintiff has made and continues to make under
the "second deed of trust" in order to prevent default and
foreclosure under the "second deed of trust" during the pendency
of this trial. Foreclosure under the "second deed of trust"
during this trial would render moot any recovery Plaintiffs
might otherwise be entitled to in a successful action.

F.    Plaintiff's assert as a violation of "TILA" by
"OneWest", offset and all defenses or counterclaims to an action
to collect amounts owed by the consumer brought by a person
liable under this subchapter as provided by 15 U.S.C.1640(h).

7.    <u>For the Seventh Cause of Action (Unjust Enrichment)</u>

A.    That the Court, in the absence of any other legal
remedy in this Complaint, order "OneWest" to return all payments
made by Plaintiff to them and their predecessors from and after
the date of the loan modification, together with the legal rate
of interest.

8.   That the Court enjoin "OneWest" from continuing the Trustee's Sale until such time as the court has made its determinations in this Complaint in order to prevent irreparable harm to Plantiffs.

9.   For an award of any attorneys' fees and costs Plantiffs may incur herein.

10.   For an award of pre- and post-judgment interest on all foregoing sums at the maximum rate permitted by law.

11.   Plaintiff requests damages for all causes of action in this Complaint in the amount of $800,000.

12.   For such other and further relief as the Court deems appropriate under the circumstances.

13.   Plaintiffs further demand the Right to a Jury Trial on all issues triable by jury as provided by Rule 38 Federal Rules of Civil Procedure.

DATED this __31st__ day of July, 2009.

Respectfully submitted,

Matthew D. Diamond

Susan E. Diamond

Pro Per

1

2
<u>**LIST OF EXHIBITS**</u>

3

4      1.    Exhibit A – Copy of First Deed of Trust & Note

5                       (the "subject deed of trust")

6      2.    Exhibit B – Copy of Second Deed of Trust to Citibank

7                       (the "second deed of trust"

8      3.    Exhibit C – Acknowledgement of Loan Forbearance

9                       Request by IndyMac dated 06/25/2008.

10     4.    Exhibit D – Loan Forbearance Plan Agreement dated

11                      07/10/2008.

12     5.    Exhibit E – Approval of Loan Modification on

13                      10/09/2008 by IndyMac.

14     6.    Exhibit F – Proof of Delivery of Loan Modification

15                      to IndyMac on 10/14/2008.

16     7.    Exhibit G – Letter dated 4/03/09 to"IndyMac"

17                      requesting information on payment refusal.

18     8.    Exhibit H – Notice of Assignment, Sale, or Transfer

19                      Of Servicing Rights to "IndyMac Mortgage"

20                      dated 04/10/2009 received on 04/13/2009.

21     9.    Exhibit I – Qualified Written Request to "IndyMac

22                      Mortgage" dated 04/13/2009.

23
       10.   Exhibit J – Rescission Letter sent to "OneWest" and
24
                         "IndyMac Mortgage" dated 06/01/2009.
25

11.   **Exhibit K** – Letter from Elke Poerschke, Vice-President
      Corporate Compliance, "OneWest", dated
      June 11, 2009, denying that Plaintiffs
      had a right of rescission.

12.   **Exhibit L** – Response to Plaintiffs Qualified Written
      Request from "IndyMac Mortgage" dated
      04/30/2009, postmarked 06/18/2009.

13.   **Exhibit M** – Accounting statements from "IndyMac
      Mortgage" provided in their response to
      Plaintiffs Qualified Written Request.

14.   **Exhibit N** – Second letter from Elke Poerschke,
      "OneWest", dated July 6, 2009, stating
      the servicing group was researching the
      matter.

15.   **Exhibit O** – Substitution of Trustee by "OneWest"
      recorded 07/10/2009.

16.   **Exhibit P** – Notice of Trustee's Sale recorded
      07/10/2009.

**I CERTIFY THESE COPIES
TO BE TRUE AND CORRECT TO
THE BEST OF MY KNOWLEDGE.**

Susan E. Diamond